# Case No. 24-10386

## In the
## United States Court of Appeals
## For the Fifth Circuit

STATE OF TEXAS
*Plaintiff-Appellee,*

v.

MERRICK GARLAND, U.S. ATTORNEY GENERAL, IN HIS OFFICIAL
CAPACITY AS UNITED STATES ATTORNEY GENERAL; CHARLOTTE A.
BURROWS, IN HER OFFICIAL CAPACITY AS CHAIR OF THE U.S. EQUAL
EMPLOYMENT OPPORTUNITY COMMISSION; JOCELYN SAMUELS, IN HER
OFFICIAL CAPACITY AS VICE CHAIR OF THE U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION; KEITH SOLDERLING, IN HIS OFFICIAL
CAPACITY AS COMMISSIONER OF THE U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION; ANDREA R. LUCAS, IN HER OFFICIAL
CAPACITY AS COMMISSIONER OF THE U.S EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION; CHRISTOPHER W. LAGE, IN HIS OFFICIAL
CAPACITY AS GENERAL COUNSEL OF THE EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION; EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION; UNITED STATES DEPARTMENT OF JUSTICE,
*Defendants-Appellants*

On Appeal from the United States District Court
For the Northern District of Texas,   Case No. 5:23-cv-034-H

## BRIEF OF AMICUS CURIAE TEXAS EMPLOYMENT LAWYERS
## ASSOCIATION
## IN SUPPORT OF DEFENDANTS-APPELLANTS

Caitlin Boehne
KAPLAN LAW FIRM,
PLLC
caitlin@kaplanlawatx.com

Tyler Talbert
SCANES YELVERTON
TALBERT, LLP
talbert@sytfirm.com

Kyla Cole
COLE LEGLER, PLLC
kyla@nlcemployeelaw.com

## SUPPLEMENTAL CERTIFICATE OF INTERESTED PERSONS

Under Fifth Circuit Rule 29.2, I supplement the Certificate of Interested Persons provided in the briefs of Appellant and Appellee by naming the following persons or entities who have an interest in the outcome of this litigation:

**Amicus Curiae:**

Texas Employment Lawyers Association

/s/ Tyler Talbert
Tyler Talbert

## COUNSEL FOR AMICUS CURIAE

Caitlin Boehne
KAPLAN LAW FIRM, PLLC
caitlin@kaplanlawatx.com
Texas State Bar No. 24075815
2901 Bee Caves Rd, Ste. G
Austin, Texas 78746

Tyler Talbert
SCANES YELVERTON TALBERT, LLP
talbert@sytfirm.com
Texas State Bar No. 24088501 100
Ritchie Road, Suite 101
Waco, Texas 76712

Kyla Cole
COLE LEGLER, PLLC
kyla@nlcemployeelaw.com
Texas State Bar No. 24033113
3300 Oak Lawn Ave., Suite 425
Dallas, Texas 75219

# TABLE OF CONTENTS

SUPPLEMENTAL CERTIFICATE OF INTERESTED PERSONS ...........................................2

COUNSEL FOR AMICUS CURIAE.................................................................................3

TABLE OF CONTENTS .................................................................................................4

TABLE OF AUTHORITIES.............................................................................................5

INTEREST OF AMICUS CURIAE ...................................................................................7

SUMMARY OF ARGUMENT ........................................................................................8

ARGUMENT ............................................................................................................. 11

I.   Texas workers need the legal protections of the Pregnant Workers
     Fairness Act............................................................................................ 11

II.  Texas workers need reasonable accommodations for pregnancy,
     childbirth, and related medical conditions............................................... 13

     A. Without the PWFA, Texas employers can deny workers even
        the most basic pregnancy accommodations. ..................................... 15

     B. The PWFA prevents employers from putting pregnant workers
        on unpaid leave when an accommodation would allow them to
        work. ...............................................................................................20

III. Texas workers need protection from retaliation when they request
     or use an accommodation for pregnancy, childbirth, or related
     medication conditions. ........................................................................... 21

CONCLUSION ..........................................................................................................24

**Cases**

*Carmona v. Dejoy*,
No. 22-20064, 2022 WL 16836978 (5th Cir. Nov. 9, 2022).........................14

*Gilbert v. Kroger Co.*,
No. CV 19-0496, 2020 WL 2549700 (W.D. La. May 19, 2020)..................14

*Joseph v. Taco Bell of Am., LLC*,
No. CV 17-11460, 2018 WL 2735485 (E.D. La. June 7, 2018).....................21

*Pennucci-Anderson v. Ochsner Health Sys.*,
No. CV 19-271-DPC, 2021 WL 242862 (E.D. La. Jan. 25, 2021) ...........14, 19

*Santos v. Wincor Nixdorf, Inc.*,
778 F. App'x 300 (5th Cir. 2019) ................................................................14

*Tomiwa v. PharMEDium Servs., LLC*,
No. 4:16-cv-3229 (S.D. Tex. Apr. 20, 2018)................................................14

*Webster v. United States DOE*,
267 F. Supp. 3d 246 (D.D.C. 2017) ............................................................11

*Young v. UPS*,
575 U.S. 206, 135 S. Ct. 1338 (2015)...................................................*passim*

**Statutes and Rules**

29 C.F.R. pt. 1630 app. .................................................................................. 11

29 C.F.R. § 1630.2 ........................................................................................ 11

29 C.F.R. pt. 1636 app.................................................................................. 22

29 C.F.R. § 1636.5 ........................................................................................22

29 U.S.C. § 2611 .......................................................................................... 12

29 U.S.C. § 2612 ............................................................... 12

42 U.S.C. § 2000gg .......................................................*passim*

**Other Authorities**

Rubeena Sachdev, *How to Protect Pregnancy in the Workplace*, 50 U.S.F.
L. Rev. 333, 334 (2016). ........................................................ 14

## INTEREST OF AMICUS CURIAE

Amicus Curiae, Texas Employment Lawyers Association ("TELA"), is an organization of attorneys who represent employees in Texas. TELA members represent employees in employment-related disputes, fight for equal rights, and promote working environments free from unlawful discrimination. The organization seeks to protect and enforce the legal rights and opportunities of all Texas workers and to strengthen the community of lawyers who represent them. TELA promotes legislative protection of worker rights and supports judicial enforcement of those rights through advocacy and litigation. TELA has advocated for workers' rights for more than three decades, since 1992.

TELA members' clients are routinely denied workplace accommodations related to pregnancy, childbirth, and related medical conditions, or are retaliated against for requesting or using accommodations. TELA members have expertise in prosecuting pregnancy discrimination and retaliation claims in Texas. TELA members are all too familiar with the gaps in legal protections available to pregnant workers and new parents, as well as the tremendous benefit of the federal Pregnant Workers Fairness Act ("PWFA") in 2023. Whether the PWFA—a critical legal protection for Texas workers—was properly enacted is at issue in this appeal.

TELA offers this brief to address the dearth of legal protections available to many pregnant workers and new parents in Texas before the enactment of the federal PWFA in 2023. This brief spotlights three points that have not been addressed about the practical realities of bringing pregnancy discrimination claims in Texas.

First, the basic legal landscape of laws that apply to protect pregnant workers was littered with gaps before the enactment of the PWFA, the marquee federal legislation aimed at curtailing pregnancy discrimination in the workplace. One of the most prominent gaps in the Pregnancy Discrimination Act ("PDA"), was the difficulty in proving and obtaining relief when pregnant women were discriminated against or denied accommodations. The United States Supreme Court's decision in *Young v. UPS,* further narrowed the protections, making it harder to obtain relief. 575 U.S. 206, 135 S. Ct. 1338 (2015).

After *Young*, to make out a prima facie case of pregnancy discrimination based on a denial of a workplace accommodation, a pregnant worker must identify a non-pregnant comparator "similar in their ability or inability to work." *Id.* at 229. This hurdle has proved near insurmountable and operated as a de facto bar to pregnancy discrimination claims in Texas based on a failure to accommodate.

Similarly, many pregnant workers are entitled to workplace accommodations under the Americans with Disabilities Act or limited job-protected leave under the Family and Medical Leave Act. But the reach of these legal protections is limited because the ADA only protects people with disabilities—which may not include pregnant women—and because not all employees are eligible for FMLA leave. Further, for those eligible for FMLA leave, the 12 weeks of job-protected leave is often not enough time for Texas workers to recover from childbirth.

Second, the PWFA provides critical guarantees for pregnant workers and new parents to remain employed. These new guarantees (1) require employers to provide reasonable accommodations to employees without regard for non-pregnant comparators, (2) prevent employers from denying jobs or promotions based on a worker's need for an accommodation, and (3) prohibit employers from imposing accommodations that were not arrived at through the interactive process, including forcing workers to take leave when an accommodation would allow them to continue working. Each of these affects Texas workers who have been denied basic pregnancy-related accommodations, such as more bathroom breaks, time off work to attend prenatal doctors' appointments, or assistance lifting heavy objects. TELA has a vested interest in ensuring pregnant workers and new parents receive accommodations and have meaningful avenues for redress when they do not.

Third, the PWFA provides essential legal protection to workers who have been retaliated against for requesting a reasonable accommodation or who are penalized for using a reasonable accommodation. This feature ensures that the PFWFA has full effect because workers will not have to fear using the accommodations that employers must offer. This is a marked improvement for pregnant Texas workers, who were otherwise not entitled to an adjustment or exception to employers' productivity or attendance policies if they accepted reasonable accommodations.

The PWFA's protections are anything but abstract; they provide essential relief to soon-to-be parents. TELA shares the stories of Texans who have experienced unlawful discrimination or retaliation because of their pregnancy, spotlighting the need to maintain these safeguards. For these reasons, TELA urges the Court to give effect to the essential protections the PWFA provides to Texas workers and to reject arguments that would deprive Texas workers of these protections.

**ARGUMENT**

## I. Texas workers need the legal protections of the Pregnant Workers Fairness Act.

The Pregnant Workers Fairness Act ("PWFA") (42 U.S.C. § 2000gg, et seq.) closes several yawning gaps in the patchwork of civil rights laws that apply to pregnant workers.

The PWFA came on the heels of the 2015 U.S. Supreme Court decision, *Young v. UPS*, which undercut the application of the Pregnancy Discrimination Act ("PDA") to pregnant workers needing workplace accommodations. 575 U.S. 206, 135 S. Ct. 1338 (2015).[1] Under *Young*, to make out a claim under the PDA based on the denial of a workplace accommodation, pregnant workers had to identify a similarly situated non-pregnant comparator that was granted the same accommodation—a burden too high for many workers to meet. *Id.* at 229.

Although pregnancy itself is generally not considered a disability within the meaning of the Americans with Disabilities Act ("ADA"), pregnancy-related impairments may be, and would thus entitle a worker to reasonable workplace accommodations. *Webster v. United States DOE*, 267 F. Supp. 3d 246, 266 (D.D.C.

---

[1] In *Young*, the Supreme Court held that a pregnant worker made out a prima facie case under the PDA. However, in articulating the legal standard for plaintiffs alleging that "the denial of an accommodation constituted disparate treatment," the Court held that the plaintiff must show that the employer treats pregnant workers "less favorably than it treats nonpregnant workers similar in their ability or inability to work." 575 U.S. at 213, 229.

2017) (collecting cases); 29 C.F.R. pt. 1630 app., § 1630.2(h). But many pregnant women do not have pregnancy-related disabilities and still require simple workplace accommodations. An accommodation as simple as more restroom breaks was not guaranteed to pregnant Texas workers without a disability until the PWFA took effect.

And the need for these protections is amplified given the limitations of the Family and Medical Leave Act ("FMLA"). The ability of new parents to access basic, unpaid, job-protected leave in Texas is limited to what is provided by the FMLA or the ADA. The FMLA provides twelve weeks of unpaid job-protected leave to pregnant workers and new parents, but only if the workers have been employed for at least one year with an employer who must comply with the FMLA (generally those with at least 50 employees within a 75-mile radius). 29 U.S.C. §§ 2611-12. Likewise, under the ADA, a worker who needs some short period of leave from work because of a disability is entitled to that leave as a reasonable accommodation; and this is true for pregnant workers and new parents—but only if they have a disability. Thus, for example, a non-disabled new parent who has been working at a job for less than a year is entitled to no job-protected leave whatsoever in Texas.

Congress enacted the PWFA to fill in these gaps, granting Texas workers—all American workers—five new protections.[2]

---

[2] These protections are new and important for pregnant workers, but are not new concepts for employers, as these accommodations are available under the ADA for those who establish disability.

(1)    The right to receive reasonable accommodations related to pregnancy, childbirth, or related medical conditions.

(2)    The right to receive those reasonable accommodations through the interactive process.

(3)    The right to remain employed and not be placed on leave (whether paid or unpaid) if another reasonable accommodation exists.

(4)    A prohibition on employers denying jobs or promotions because of a worker's need for a reasonable accommodation.

(5)    The right to be free from retaliation for requesting or using those reasonable accommodations.

42 U.S.C. § 2000gg-1.

The import of these new rights cannot be overstated—they provide critical protection to pregnant workers and new parents in Texas that allow them to remain employed in supportive workplaces while growing their families.

**II.    Texas workers need reasonable accommodations due to pregnancy, childbirth, and related medical conditions.**

Employers in Texas routinely deny workplace accommodations to pregnant workers. In the aftermath of *Young*, workers effectively have no legal vehicle—or a much tougher one—to make out a claim of pregnancy discrimination for a failure to accommodate because the legal hurdle was so high. *Young* required a worker to prove that her employer had granted the same accommodation to others "similar in their ability or inability to work." 575 U.S. at 229. The problem is that this standard ignores that "pregnancy, from a biological standpoint, is unlike any other condition and has no

equal comparator." Rubeena Sachdev, *How to Protect Pregnancy in the Workplace*, 50 U.S.F. L. Rev. 333, 334 (2016).

Revealing this shortcoming, both federal district courts and this Court have granted summary judgment against Texas workers on exactly this issue. *Carmona v. Dejoy*, No. 22-20064, 2022 WL 16836978, at *2-3 (5th Cir. Nov. 9, 2022) (though employee identified other mail carrier coworkers who received some assistance with large packages, she "provided no evidence that [the comparators] required the same accommodations… or were in 'nearly identical circumstances.'"); *Santos v. Wincor Nixdorf, Inc.*, 778 F. App'x 300, 304 (5th Cir. 2019) (plaintiff seeking a work-from-home accommodation did show that any other employee "was similarly unable to work in the office for the same duration and at the same stage of his or her employment."); *Tomiwa v. PharMEDium Servs., LLC*, No. 4:16-cv-3229, 2018 WL 1898458, at *4 (S.D. Tex. Apr. 20, 2018) ("defendant never made any special accommodations in the past for any employees similarly situated or otherwise"); *Gilbert v. Kroger Co.*, No. CV 19-0496, 2020 WL 2549700, at *6 (W.D. La. May 19, 2020); *Pennucci-Anderson v. Ochsner Health Sys.*, No. CV 19-271-DPC, 2021 WL 242862, at *8 (E.D. La. Jan. 25, 2021) (plaintiff's claim failed "in the absence of a similarly situated employee in nearly identical circumstances").

These cases show what a high hurdle Texas workers must overcome to succeed on a pregnancy discrimination claim based on a failure to accommodate. And the experience of pregnant Texas workers—struggling to receive basic accommodations to continue working—amplifies the need for meaningful protections the PWFA provides.

### A. Without the PWFA, Texas employers can deny workers even the most basic pregnancy accommodations.

Many Texan workers who would be entitled to necessary pregnancy accommodations are left with little protection without the PWFA. Several accounts— which are all too representative of countless more—illuminate this reality.

For example, TELA learned of a worker, Lily, who started a new job just before learning of her pregnancy. She and her husband struggled to get pregnant and used fertility treatments to conceive. Lily's new job was in customer service at a call center, where she worked remotely. In her first week of work after announcing her pregnancy, Lily's supervisor wrote her up for leaving her desk too often to use the restroom. At a one-on-one coaching session with the same supervisor a few weeks later, he told Lily she needed to take fewer bathroom breaks and asked her to "hold it." Further, during her first trimester, Lily experienced such severe morning sickness that she actually lost weight. One morning Lily asked for the day off work because of her morning sickness; her supervisor denied her request and Lily was forced to work. Her supervisor also informed Lily when she requested a few hours off to attend an ultrasound appointment

that she would be penalized under the company's attendance policy. Lily was ultimately fired for baseless allegations of poor performance when she was at the top of her training class.

Lily's experience occurred just months before the PWFA took effect. The PWFA would have provided Lily with the legal protection she needed to access basic accommodations for pregnant workers—more restroom breaks, job-protected time off to attend routine prenatal doctor's appointments or because of morning sickness, and protection from retaliation for requesting and using these accommodations. Instead, she was put through the stress of trying to "hold it" at work, the indignity and discomfort of working through severe morning sickness, and the fear of jeopardizing her new job to get basic healthcare.

Likewise, Hayley, a law enforcement officer in Texas, had two unplanned absences because of pregnancy-related sickness.[3] Her employer told her that those two absences would count against her under the attendance policy, and she would be fired if she had a third. This, understandably, skyrocketed Hayley's stress levels, which caused her to have a high-risk pregnancy and required fundamental alterations to her birth plan. Under the PWFA, Hayley would not have had to live with the constant

---

[3] Hayley's story is detailed in A Better Balance's 2024 report *Pregnant and Finally Protected*, located at https://www.abetterbalance.org/wp-content/uploads/2024/06/ABB-Pregnant-and-Finally-Protected-RD10.pdf (last accessed August 13, 2024).

threat of losing her job after taking two sick days, resulting in a high-risk pregnancy.

Late last year, Texas worker Jacqueline Tarango prevailed on her claim under the Pregnant Worker Fairness Act in arbitration.[4] According to the arbitration award, she was an accountant for a local government unit in Texas. She discussed her new pregnancy with her CFO. She told him that she planned to take a few months of parental leave and return to work when her baby was three months old. But the daycare her daughter attended did not accept babies until they were six months old. She spent weeks searching for a daycare that accepts three-month-old babies and transferred her two-year-old daughter to this daycare. When Jacqueline woke one morning with sciatic pain—a common pregnancy-related issue that may not rise to the level of a disability— she came to work wearing tennis shoes. The CFO asked her why she was wearing tennis shoes and, when Jacqueline informed him of her lower back pain, he responded by prohibiting her from wearing tennis shoes going forward, suggesting it is not appropriate office attire, pregnant or not.

Jacqueline's experience occurred after the PWFA took effect; indeed, she and the CFO attended a mandatory workplace training around the time it denied her accommodations. Yet the CFO ignored the law's requirements, telling Jacqueline that he was glad she did not need any special accommodations.

---

[4] *See* Interim Award of Arbitration, *Tarango v. Permian Basin Community Centers for MHMR dba PermiaCare*, No. 7:24-cv-124-DC-RCG, in Arbitration, contained in ECF No. 13, Exhibit C.

Wilneica Brown filed suit against her employer for violations of the PWFA in October 2025.[5] Her complaint alleges that she left work to go to the emergency room on May 27, 2025 for complications related to her pregnancy. When her doctor cleared her to return to work two days later, Wilneica informed her employer that she would need accommodations related to her pregnancy that might include a modified work schedule and time off to attend her doctor's appointments. Wilneica's employer fired her just six days later, on June 4, 2025.

Jacqueline and Wilneica's experiences are telling. Even with the protection of the PWFA, those Texas workers growing and nurturing children must fight an uphill battle to get the pregnancy-related accommodations they need. Without the PWFA, pregnant Texans are left to the whims of their employers.

And Texas healthcare workers are particularly vulnerable without the PWFA's protections. For example, Jennifer, a nurse practitioner working at the height of the COVID-19 pandemic, sought and was refused the same precautions for her pregnancy that were granted to a male immunocompromised doctor.[6] Under *Young*, and the requirement for "nearly identical circumstances," Jennifer's employer could defeat a

---

[5] *See* Plaintiff's Original Complaint, *Brown v. Whelan Security Co.*, No. 4:25-cv-5136, in the U.S. District Court for the Southern District of Texas, Houston Division, Dkt. 1.
[6] Jennifer's story is detailed in A Better Balance's 2021 report *Long Overdue*, located at https://www.abetterbalance.org/wp-content/uploads/2021/06/Long-Overdue-June-2021-Update-Final-1.pdf (last accessed August 13, 2024).

claim for pregnancy discrimination—even though Jennifer could show the same accommodation was granted to others—by pointing out the difference in job titles and duties between Jennifer and the male doctor. Under the PWFA, Jennifer could receive these safety measures to protect herself and her child while working.

And the story of Amanda Pennucci-Anderson resonates as well. Amanda was a registered nurse who sought an accommodation for a 30-pound lifting restriction but was told "there is no light duty nursing." *Pennucci-Anderson*, 2021 WL 242862, at *5. Because her employer told her they would not accommodate her restriction, to continue working in her job, she returned with a new doctor's note releasing her to work without restrictions. *Id*. at *4-5. Even still, her claim was dismissed on summary judgment not because she failed to identify comparators who had been granted light duty, but because those male comparators "complete[d] the [interactive] accommodation process"—i.e., they did not withdraw their requests for accommodation—and were therefore not in sufficiently identical circumstances. *Id.* at *19.

These stories underscore struggles throughout Texas that working women face while pregnant and, by implication, the pressing need for the PWFA's critical protections. Workers should not have to choose between nurturing their unborn children and earning an income; the law should amply protect those during the most

basic and ubiquitous condition, pregnancy.

### B. The PWFA prevents employers from putting pregnant workers on unpaid leave when accommodations would allow them to work.

Texas employers commonly respond to requests for pregnancy-related accommodations by denying an accommodation that would allow a worker to remain working, and instead putting the worker on unpaid leave. This is illegal under the PWFA. 42 U.S.C. § 2000gg-1(4). And that's important because many workers in Texas simply cannot afford to miss paychecks for weeks or months on end before giving birth.

For example, Jessica, an EMT in Houston who called A Better Balance's helpline, had lifting restrictions because of her pregnancy. Jessica's employer ultimately denied her request for workplace accommodation and Jessica was forced to take unpaid leave. Likewise, Jennifer's employer, after denying her requested accommodation for COVID-related safety precautions, forced her to take unpaid leave.

Without the PWFA, Texas employers will continue to slot pregnant workers into unpaid leave when reasonable accommodations exist that would permit them to continue working. The PWFA's protections are essential to providing meaningful protection, allowing those who want to work, even while pregnant, the ability to do so.

### III. Texas workers need protection from retaliation when they request or use an accommodation for pregnancy, childbirth, or related medical conditions.

Along with requiring reasonable accommodations, the PWFA prohibits retaliation against workers who request or use those accommodations. 42 U.S.C. § 2000gg-1(5). For many Texas workers seeking pregnancy-related accommodations, this is a vital legal protection.

But without the PWFA, no such protection may exist. *See, e.g., Joseph v. Taco Bell of Am., LLC*, No. CV 17-11460, 2018 WL 2735485, at *2 (E.D. La. June 7, 2018) ("a request for accommodation relates to an employment practice made unlawful by the ADA, not Title VII…[t]hus [plaintiff's] request for accommodation does not constitute protected activity."). And so, unless a worker requests an accommodation for a pregnancy-related disability under the ADA, neither the PDA nor Title VII protects pregnancy-related requests for accommodation. As a result, Texas workers are left vulnerable to adverse employment actions, including even termination, simply for requesting basic reasonable accommodations related to pregnancy, childbirth, or related medical conditions.

TELA is familiar with Texas workers reprimanded for requesting or using workplace accommodations related to their pregnancies. For example, Lily, above, was written up multiple times by her supervisor for simply taking additional restroom breaks. Likewise, Jacqueline, above, took a few hours off from work to have an

emergency ultrasound when an abnormality was detected on a routine ultrasound. The next day, her CFO reprimanded her for taking this time off.

In June 2025, another Texas worker and new mother, Clarissa Pichon, filed suit against her employer for retaliation under the PWFA in the Western District of Texas.[7] The complaint alleges that Pichon returned from maternity leave and requested lactation breaks under her employer's "New Mother's Policy" in September 2024. Over the next several months, Pichon received her very first low performance evaluation for the company in over two years of work, complained that the evaluation was in retaliation for taking her maternity leave and requesting lactation breaks, was placed on administrative leave for seven weeks, and was ultimately terminated in January 2025.

Another Texas worker, Amanda Neveaux, filed suit late last year for violations of the PWFA.[8] The complaint alleges that, after Amanda returned from maternity leave in March 2024, she was assigned to work at hospitals much futher from her home than was typical, interfering with her ability to breastfeed her infant. When she requested an accommodation to be assigned to a typical location closer to her home, her manager took her off the schedule entirely. Amanda was ultimately fired in June

---

[7] *See* Plaintiff's Original Complaint, *Pichon v. PNC Bank*, No. 5:25-cv-684, in the U.S. District Court for the Western District of Texas, San Antonio Division, Dkt. 1.
[8] *See* Plaintiff's Complaint, *Neveaux v. Ascension Seton*, No. 1:25-cv-1818-DAE, in the U.S. District Court for the Western District of Texas, Austin Division, Dkt. 1.

2024. Similarly, Kenisha Capron was promptly terminated in January 2025 after she returned from maternity leave with an approved accommodation to work from home. Capron filed suit late last year alleging violations of the PWFA.[9]

And the PWFA requires employers not just to refrain from taking materially adverse action against workers who request or use an accommodation, but obligates employers to make adjustments or exceptions to policies that would penalize those who use those accommodations. 42 U.S.C. § 2000gg-f(2) (prohibition on coercing, intimidating, threatening, or interfering with an individual's enjoyment of their rights under the PWFA); *see also* 29 C.F.R. pt. 1636 app. § 1636.5(f)(2) (a "no exceptions will be made for any reason" policy that purports to limit an employee's right to invoke PWFA protection would constitute unlawful coercion).

This protection is sorely needed for Texas workers, who are often caught between a rock and a hard place even when their requests are granted. They can use the accommodation and be penalized under an employer's general policy, or they can refrain from taking the accommodation and not suffer any penalties.

This most often occurs with attendance policies or productivity standards. For example, when Lily sought permission to take a few hours off work for a routine ultrasound, her supervisor told her that she could take that time off, but that it would

---

[9] *See* Plaintiff's Original Complaint, *Capron v. Family Solutions of Louisiana, Inc.*, No. 4:25-cv-6293, in the U.S. District Court for the Southern District of Texas, Houston Division, Dkt. 1.

result in an "occurrence" under the strict attendance policy in place for new hires, which could result in her termination. Hayley likewise faced the same penalty for taking two unplanned absences for pregnancy-related illness. The law enforcement agency told her that if she took a third unplanned absence it would result in her termination, the stress from which resulted in a high-risk pregnancy. As to productivity standards, Lily was penalized for taking fewer calls at her call center because each time she took a restroom break, she would drop to the bottom of the queue of workers who were ready to take a customer's call.

The PWFA fills these gaps by requiring employers to respect workers' need for accommodation and making adjustments or exceptions to their policies or workplace systems so that workers are not punished or fired for using the pregnancy accommodations they need.

## CONCLUSION

Through the PWFA, Congress established meaningful and much-needed protections for workers experiencing pregnancy, childbirth, and related medical conditions. TELA urges the Court to consider this important context and then reject Appellee's arguments, which would leave Texas workers limited to the inadequate and gap-filled patchwork that preceded the PWFA.

Respectfully submitted,

By: _____ /s/ *Caitlin Boehne* _____
  Caitlin Boehne
  State Bar No. 24075815
  caitlin@kaplanlawatx.com
  KAPLAN LAW FIRM, PLLC
  2901 Bee Caves Rd, Ste. G
  Austin, Texas 78746
  Tel: (512) 553-9390

  Tyler B. Talbert
  State Bar No. 24088501
  talbert@sytfirm.com
  SCANES YELVERTON TALBERT, LLP
  100 Ritchie Road, Suite 101
  Waco, Texas 76712
  (254) 399-8788

  Kyla Cole
  COLE LEGLER, PLLC
  kyla@nlcemployeelaw.com
  Texas State Bar No. 24033113 3300
  Oak Lawn Ave., Suite 425
  Dallas, Texas 75219

### CERTIFICATE OF CONFERENCE

I certify that on February 16, 2026, I conferenced with counsel for Appellant and Appellees regarding the filing of this brief. By email correspondence, William Cole stated that Appellee does not oppose a timely filed amicus brief, and Sean R. Janda stated no opposition from Appellants to a timely filed amicus brief as well.

/s/ *Tyler Talbert* _____
    Tyler Talbert

## ECF CERTIFICATION

I hereby certify (i) the required privacy redactions have been made under 5th Cir. R. 25.2.13; (ii) the electronic submission is an exact copy of any paper document submitted pursuant to 5th Cir. R. 25.2.1; (iii) the document has been scanned for viruses and is free of viruses; and (iv) the paper document will be maintained for three years after the mandate or order closing the case issues, under 5th Cir. R. 25.2.9.

*/s/ Tyler Talbert*
Tyler Talbert

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 4,015 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word in Equity 14 pt. for text and Equity 12pt for footnotes.

*/s/ Tyler Talbert*
Tyler Talbert

## CERTIFICATE OF SERVICE

This is to certify that on February 20, 2026, a corrected copy of the foregoing document, was filed with the clerk of the court for the United States Court of Appeals for the Fifth Circuit, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Tyler Talbert*
Tyler Talbert